Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| CARMELO ADORNO CASTRO<br><br>Recurrente<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202500118<br><br>Consolidado con:<br><br>KLRA202500145 | *Revisión de Decisión Administrativa* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 150105<br><br>Sobre: No jurisdicción-Ley Núm. 85-2024/ Cierre y Archivo |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2025.

El 24 de febrero de 2025, compareció ante este foro revisor el señor Carmelo Adorno Castro (en adelante, señor Adorno Castro o recurrente), representado por la Sociedad para Asistencia Legal de Puerto Rico (SAL) mediante recurso de revisión judicial. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 10 de diciembre de 2024, archivada en autos el 19 de diciembre de 2024, y notificada el 20 de febrero de 2025, por la Junta de Libertad Bajo Palabra (en adelante, JLBP o recurrida). En virtud de esta, la JLBP se declaró sin jurisdicción para atender el caso del señor Adorno Castro. Consecuentemente, ordenó el cierre y archivo administrativo de este.

Por otra parte, el 27 de febrero de 2025, recibida por la Secretaria de este foro revisor el 11 de marzo de 2025, compareció el señor Adorno Castro por derecho propio, mediante un segundo recurso de revisión judicial con identificación alfanumérica

Número Identificador

SEN2025 _____

KLRA202500145.  A través de este, también solicita la revisión de la *Resolución* emitida por la JLBP el 10 de diciembre de 2024.

Por solicitarse en ambos recursos la revisión del mismo dictamen emitido por la JLBP, el 15 de abril de 2025, emitimos *Resolución* mediante la cual, ordenamos la consolidación de estos.

Por los fundamentos que exponemos a continuación, se confirma la determinación recurrida en el recurso KLRA202500118; y se desestima el recurso KLRA202500145 por falta de jurisdicción.

**I**

Los eventos fácticos y procesales atinentes a la controversia ante nuestra consideración se esbozan a continuación.

El 7 de noviembre de 2013, el señor Adorno Castro fue declarado culpable por infracción a los artículos 133 y 144 del Código Penal de Puerto Rico de 2012, 33 LPRA §§ 5194 y 5205 (actos lascivos y envío, transportación, venta, distribución, exhibición o posesión de material obsceno); infracción al Art. 59 de la Ley Núm. 246 de 16 de diciembre de 2011, conocida como la *Ley para la Seguridad, Bienestar y Protección de Menores*, según enmendada, 8 LPRA § 1174 (derogado) (maltrato)[1]; y tentativa de infracción al Art. 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, conocida como *Ley para la Prevención e Intervención con la Violencia Doméstica*, 8 LPRA § 631, (maltrato).[2] Ese mismo día, el foro primario dictó *Sentencia*.[3]

No obstante lo anterior, el 13 de marzo de 2018, la referida *Sentencia* fue enmendada, a los fines de corregir las penas impuestas, de modo que, fuesen extinguidas concurrentemente.[4] Adicionalmente, el tribunal primario incluyó una pena agravada de

---

[1] Advertimos que, al momento en que el señor Adorno Castro fue sentenciado, el maltrato se encontraba tipificado el artículo 58 (A) de la Ley Núm. 246-2011, *supra* (derogado). No obstante, el referido estatuto sufrió varias enmiendas, y en 2018, se renumeró el anterior artículo 58 como 59.

[2] Apéndice del recurso KLRA202500118, págs. 16-17.

[3] *Íd.*

[4] *Íd.*

tres (3) años. Así, el señor Adorno Castro quedó sentenciado a un total de dieciocho (18) años de cárcel por los delitos cometidos.

Así las cosas, el 3 de noviembre de 2024, el Departamento de Corrección y Rehabilitación (en adelante, DCR) refirió el caso del recurrente a la JLBP, con el propósito de que fuese considerado para el privilegio de libertad bajo palabra.[5]

Ante ello, el 9 de octubre de 2024, notificada el 8 de noviembre de 2024, la JLBP emitió *Resolución Interlocutoria*.[6] Por medio de esta, adujo que debía corroborar su jurisdicción para atender el caso del recurrente. En detalle, explicó que, de conformidad a la Ley Núm. 85 de 28 de mayo de 2024 (en adelante, Ley Núm. 85-2024), la JLBP carecía de jurisdicción para atender casos de personas confinadas por la comisión de ciertos delitos, entre ellos, el de actos lascivos. Adujo que, si bien el recurrente se encontraba extinguiendo una pena por dicho delito, del expediente no surgía la fecha en que este cumpliría la pena de la sentencia impuesta por este. A esos efectos, la JLBP solicitó al DCR que proveyera una liquidación de la sentencia actualizada, detallando el asunto antes reseñado, así como las sentencias emitidas por el Tribunal de Primera Instancia.

El 6 de noviembre de 2024, el DCR emitió una *Hoja de Control sobre Liquidación de Sentencias*, según requerido.[7]

Posteriormente, el 10 de diciembre de 2024, notificada el 20 de febrero de 2025, la JLBP emitió *Resolución*[8]. En virtud de esta, tal y como había anticipado, la JLBP razonó que, conforme a la Ley Núm. 85-2024, *supra*, carecía de jurisdicción para atender el caso del señor Adorno Castro. Precisó que, de la Hoja de Control sobre Liquidación de Sentencia emitida por el DCR, el recurrente cumplía el máximo de la pena por el delito de actos lascivos el 10 de marzo

---

[5] *Íd.*, págs. 11-14.
[6] *Íd.*
[7] Apéndice del recurso KLRA202500145, Anejo 2-B.
[8] Apéndice del recurso KLRA202500118, págs. 7-10.

de 2029. En consecuencia, la JLBP ordenó el cierre y archivo del caso.

Inconforme, el 9 de enero de 2025, el señor Adorno Castro incoó una *Moción de Reconsideración de No Jurisdicción (Ley Núm. 85-2024) para la Concesión de Libertad Bajo Palabra*.[9] En esencia, alegó que, el principio de legalidad y la prohibición de leyes *ex post facto* impedían que se le aplicara la Ley Núm. 85-2024, *supra*. Precisó que, su aplicación violentaba sus derechos constitucionales, en tanto se vulneraba su "interés libertario".[10]

La moción de reconsideración no fue atendida por la agencia recurrida.

Así las cosas, el 24 de febrero de 2025, la SAL, en representación del señor Adorno Castro, presentó ante nos su *Petición de Revisión Administrativa*, en el recurso con identificación alfanumérica KLRA202500118. En su escrito, este esgrimió como único señalamiento de error el siguiente:

> ABUSÓ DE SU DISCRECIÓN LA JLBP AL DECLARARSE SIN JURISDICCIÓN EN EL PRESENTE CASO AL APLICAR RETROACTIVAMENTE LA LEY 85-2024, VIOLENTANDOSE ASÍ EL PRINCIPIO CONSTITUCIONAL QUE PROHÍBE LEYES EX POST FACTO. ADEMÁS[,] LA ACTUACIÓN DE LA AGENCIA CONSTITUYE UNA VIOLACIÓN AL DERECHO CONSTITUCIONAL DEL RECURRENTE A UN DEBIDO PROCESO DE LEY.

Mediante *Resolución* emitida el 26 de febrero de 2025, este Tribunal, entre otros, concedió a la parte recurrida hasta el 26 de marzo de 2025, para presentar su alegato en oposición.

Al próximo día, el 27 de febrero de 2025, recibido por la Secretaria de este foro revisor el 11 de marzo de 2025, el señor Adorno Castro compareció por derecho propio ante nos, mediante un segundo recurso de revisión judicial, con identificación alfanumérica KLRA202500145. A través de este, también solicitó la

---

[9] *Íd.*, págs. 1-6.
[10] *Íd.*, pág. 5.

revisión de la *Resolución* emitida por la JLBP el 10 de diciembre de 2024, notificada el 20 de febrero de 2025. En su recurso, el recurrente esgrimió los siguientes señalamientos de error:

> En la Resolución Interlocutoria la J.L.B.P. señala en el párrafo seis (6) que el recurrente se encuentra cumpliendo sentencia por dos cargos de uno de los delitos la J.L.B.P. carece de jurisdicción, y no surge cuando el peticionario cumple la pena de la sentencia impuesta por el delito de actos lascivos, del expediente del peticionario. A lo cual el otro cargo por el cual cumple sentencia el recurrente la J.L.B.P. tiene jurisdicción.
>
> Que la J.L.B.P., en la Resolución Interlocutoria, le solicitó al D.C.R. una liquidación de sentencia actualizada en la que se detalle la fecha exacta en que el peticionario cumple la sentencia impuesta para el delito excluido bajo la Ley Núm. 85-2024 entiéndase, actos lascivos.

El 26 de marzo de 2025, la parte recurrida presentó su *Escrito en Cumplimiento de Resolución.*

Posteriormente, el 28 de marzo de 25, emitimos *Resolución* en la cual ordenamos a la SAL a informar si continuaba representando al señor Adorno Castro.

Tras varias incidencias procesales innecesarias pormenorizar, el 14 de abril de 2025, la SAL presentó una *Moción Informativa* en donde indicó que, continuaría con la representación legal del señor Adorno Castro en el caso KLRA202500118, mas, que no representaría al recurrente en el caso KLRA202500145.

Al día siguiente, y por solicitarse en ambos recursos la revisión del mismo dictamen emitido por la JLBP, emitimos *Resolución* mediante la cual ordenamos la consolidación de estos.

Más adelante, el 25 de abril de 2025, la parte recurrida presentó *Solicitud de Reconsideración y Remedio.* A grandes rasgos, esgrimió que el recurrente tenía derecho a presentar un solo recurso de revisión judicial, y que no procedía la consolidación de los casos. A tenor, solicitó, entre otros, la reconsideración de la consolidación de los casos y, la desestimación del recurso KLRA202500118.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. *Revisión de Determinaciones Administrativas*

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.* No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está

basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otro*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216.

Bajo este supuesto, la Sección 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*,

supra*;* pág. 89; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA § 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA § 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra.

Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise*

administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.* págs. 90-91.

### B. *Presentación de Recurso de Revisión Judicial*

El Artículo 4.006 (c) de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, Ley 201-2003, 4 LPRA § 24y, establece la competencia del Tribunal de Apelaciones para la revisión de decisiones, órdenes y resoluciones finales emitidas por los organismos administrativos. El mismo inciso, dispone además que el procedimiento a seguir en dichos casos se hará de acuerdo a las disposiciones de la LPAU.

A esos efectos, y en lo pertinente al caso de marras, la Sección 4.2 de la LPAU, 3 LPRA § 9672, dispone como norma general que una parte adversamente afectada por una determinación final de una agencia administrativa, puede presentar **una** solicitud de revisión ante esta segunda instancia judicial. En específico, la referida sección establece lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar **una solicitud de revisión** ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
> .      .      .      .      .      .      .      .      .

### C. *Privilegio de Libertad Bajo Palabra*

#### i.

El sistema de libertad bajo palabra se encuentra reglamentado por la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA §§ 1501 *et seq.* La libertad bajo palabra permite que, una persona que hubiese sido sentenciada a un término de

reclusión cumpla la última parte de su sentencia fuera de la institución penal, sujeto a las condiciones que se impongan para conceder dicha libertad. *Benítez Nieves v. ELA et al.*, 202 DPR 818, 825 (2019). Este beneficio tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad. 4 LPRA § 1503. Además, es un componente del proceso de rehabilitación del confinado. Se considera que mientras disfrutan del mismo están, técnicamente, extinguiendo su condena. *Rivera Beltrán v. JLBP*, 169 DPR 903, 918 (2007) (Sentencia) (Opinión Concurrente de la Juez Asociada Señora Rodríguez Rodríguez).

Ahora bien, la libertad bajo palabra no constituye un derecho a reclamarse, sino que se trata de un privilegio legislativo que descansa en la entera discreción de la JLBP. *Pueblo v. Negrón Caldero*, 157 DPR 413, 420 (2002); *Maldonado Elías v. González Rivera*, 118 DPR 260, 275-276 (1987). En ese sentido, la JLBP podrá imponer las condiciones que entienda necesarias al conceder este privilegio. 4 LPRA § 1503; *Benítez Nieves v. ELA et al.*, supra. Lo que implica que, el que goce de dicho privilegio tendrá una libertad cualificada. *Íd.* Las condiciones a imponerse, restringen las actividades del liberado más allá de las restricciones comunes que se le imponen por ley a cada ciudadano. *Íd.* Véase también, *Morrissey v. Brewer*, 408 US 471, 478 (1972).

**ii.**

A través de los años, la Ley Núm. 118-1974, *supra,* ha sufrido varias enmiendas, con el propósito de expandir la jurisdicción de la JLBP y permitir que más personas confinadas puedan beneficiarse del privilegio de libertad bajo palabra. De esta manera, se cumple con la política pública constitucional de la rehabilitación que debe traducirse en un andamiaje penal más humano en la implementación de las penas. Véase, *Exposición de Motivos* de la Ley Núm. 85 de 11 de octubre de 2022 (en adelante, Ley Núm. 85-2022)

La primera enmienda significativa ocurrió con la aprobación de la Ley Núm. 85-2022, *supra*. Por medio de esta, quedó enmendado el Artículo 3 de la Ley Núm. 118-1974, *supra*, así como el Artículo 308 del Código Penal de Puerto Rico, 33 LPRA § 5416. A grandes rasgos, los cambios implementados incluyeron unos parámetros más amplios para que las personas confinadas pudieran ser consideradas para el privilegio de libertad bajo palabra, ello según los delitos cometidos y las penas impuestas. Dichas modificaciones aplicaban de manera retroactiva, independientemente del código penal o la ley penal vigente al momento de los hechos constitutivos de delito, siempre y cuando resultaran favorables para la persona confinada.

No obstante, posteriormente se aprobó la Ley Núm. 85-2024, *supra*, a los fines de aclarar y delimitar el alcance de la aprobada Ley Núm. 85-2022, *supra*. Mediante las nuevas enmiendas, se dispuso que el cómputo del tiempo mínimo para ser elegible para el privilegio de libertad bajo palabra no sería aplicable a ciertas personas, dependiendo el delito cometido. Así, la Ley Núm. 85-2024, *supra*, reafirmó que las personas confinadas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, **actos lascivos**, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no pueden beneficiarse del privilegio de libertad bajo palabra. Ello, independientemente de la fecha de la comisión del acto delictivo y el código penal o la ley especial utilizada para dictar sentencia.

Adicionalmente, la Ley Núm. 85-2024, *supra*, incluyó una cláusula de exclusión, en su Sección 3, que dispone como sigue:

> La Junta de Libertad Bajo Palabra **no tendrá jurisdicción** para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, **actos lascivos**, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de

libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

(Énfasis nuestro).

De otro lado, la referida Sección 3 establece que, la Ley Núm. 85-2022, *supra*, no aplica retroactivamente a las personas confinadas por las actuaciones delictivas antes mencionadas. Dispone además, que la Ley Núm. 85-2022, *supra*, no surtirá efecto en el cálculo de las sentencias de las personas confinadas por los referidos delitos.

### D. Leyes ex post facto

Según es sabido, el Art. II, sec. 12 de nuestra Constitución contiene una prohibición expresa sobre la aprobación de leyes *ex post facto*. Const. PR, LPRA, Tomo 1; *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 990 (2019); *González v. ELA*, 167 DPR 400, 408 (2006). El Máximo Foro ha sido enfático en la existencia de cuatro (4) tipos de estatutos que consideran *ex post facto*, estos son las leyes que: "(1) criminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable." *Íd*. Véase, además, *Pueblo en interés menor F.R.F.,* 133 DPR 172 (1993). Esta cláusula constitucional, garantiza que los estatutos provean al ciudadano una notificación adecuada de aquella conducta prohibida y sobre las consecuencias penales que conlleva realizar tal conducta. *González v. ELA*, supra.

De igual manera, tiene como propósito prohibir la aplicación retroactiva de una ley que agrave para el acusado su relación con el

delito, la oportunidad de defenderse y la forma de cumplir con una sentencia o su extensión. *Pueblo v. Ferrer Maldonado*, supra, pág. 991, citando a E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, págs. 545–549. Véase también, L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, 2da ed., San Juan, Pubs. JTS, 2013, págs. 16-17. Por ende, la protección constitucional contra leyes *ex post facto* únicamente se activa cuando se pretende aplicar una ley penal de manera retroactiva. *Pueblo v. Ferrer Maldonado*, supra; *González v. ELA*, supra, págs. 409-410. Es por lo que, como regla general, la Asamblea Legislativa no se encuentra impedida de aplicar retroactivamente leyes de carácter civil. *Pueblo v. Ferrer Maldonado*, supra; *González v. ELA*, supra, págs. 410.

### E. Principio de Favorabilidad

En *Pueblo v. Torres Cruz*, 194 DPR 53, 59 (2015), nuestro Tribunal Supremo tuvo la oportunidad de expresarse en cuanto al principio de favorabilidad. Sobre este particular, nuestro más Alto Foro expresó lo siguiente:

> En armonía con la doctrina continental europea, al derogar el Código Penal que regía desde el 1902, adoptamos en Puerto Rico el "principio de favorabilidad", que quedó consagrado en el Art. 4 del Código Penal de 1974, (33 L.P.R.A ant. sec. 3004). *Pueblo v. González*, 165 DPR 675, 684 (2005). Posteriormente, el Art. 9 del Código Penal de 2004, (33 LPRA ant. sec. 4637) introdujo una disposición de más amplio alcance en cuanto al principio de favorabilidad.

Añadió el Tribunal Supremo de Puerto Rico en el precitado caso que, dicho principio se encuentra regulado actualmente por el Artículo 4 del Código Penal de 2012, 33 LPRA § 5004, el cual dispone, en lo pertinente, lo siguiente:

> La ley penal aplicable es la vigente al momento de la comisión de los hechos.
>
> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:

(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.

(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.

En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho.

Conforme al principio de favorabilidad, procede la aplicación retroactiva de una ley penal cuando favorece a la persona imputada de delito. *Pueblo v. Hernández García*, 186 DPR 656, 673 (2012). Comenta el Profesor Luis Ernesto Chiesa Aponte que ese principio tiene como propósito evitar la aplicación arbitraria e irracional de la ley penal, ya que "el principio republicano de gobierno exige la racionalidad de la acción del estado y esta es afectada cuando, por la mera circunstancia de que un individuo haya cometido el mismo hecho con anterioridad a otro, se l[e] trate más rigurosamente". Chiesa Aponte, *op. cit.,* pág. 59, citando a E. R. Zaffaroni, *Derecho Penal*, Parte general, 2da ed., Buenos Aires, Ed., Ediar, 2002, pág. 122; *Pueblo v. Torres Cruz*, supra, págs. 59-60.

No obstante, a diferencia de la prohibición constitucional de leyes *ex post facto* que contiene el Art. II, Sec. 12 de la Constitución de Puerto Rico, LPRA Tomo 1, el principio de favorabilidad corresponde a un acto de gracia legislativa, cuyo origen es puramente estatutario. *Pueblo v. González*, 165 DPR 675, 686 (2005). De esa manera, le corresponde a la Asamblea Legislativa establecer y delimitar el rango de aplicación del principio de favorabilidad. *Íd.*

Por otra parte, la Profesora Dora Nevares-Muñiz comenta que el principio de favorabilidad incluido en el Art. 4 del Código Penal de 2012, *supra*, "aplicará a conducta delictiva realizada a partir del 1 de septiembre de 2012 cuando se apruebe una ley que sea más favorable que el Código Penal según vigente al momento de aprobación de la ley posterior con respecto a la situación de la persona". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, 7ma ed. rev., San Juan, Inst. para el Desarrollo del Derecho, Inc., 2015, pág. 102; *Pueblo v. Torres Cruz*, supra, pág. 60.

Conforme al texto del Art. 4 del Código Penal vigente, *supra*, la ley favorable puede surgir mientras se está procesando al imputado, al momento de imponerle la sentencia o durante el término en que se cumple. Art. 4 del Código Penal, *supra*; Chiesa Aponte, *op cit.*, pág. 66. Asimismo, los cambios que se aplicarán retroactivamente pueden ser en cuanto a la tipificación del delito, sus atenuantes, las causas de exclusión de responsabilidad, los requisitos de prueba, las penas, así como disposiciones procesales. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 3ra ed. rev., San Juan, Inst. para el Desarrollo del Derecho, 2015, pág. 10.

Dicho de otro modo, lo que el mencionado postulado nos indica es que, si una ley penal, cuyos efectos resultan en un tratamiento más favorable para una persona acusada, se aprueba con posterioridad a la comisión de los hechos delictivos, esta se debe aplicar retroactivamente, de modo que la persona acusada disfrute de sus beneficios. *Pueblo v. DiCristina Rexach*, 204 DPR 779, 786 (2020).

### F. Cláusula de Reserva

Al igual que el derecho penal norteamericano, nuestro derecho estatutario también contempla cláusulas de reserva generales que aseguran la aplicación de leyes que han sido derogadas o enmendadas a aquellos hechos ocurridos durante el

período en que las mismas estuvieron formalmente vigentes. Esto es, las referidas cláusulas tienen idéntico propósito que las cláusulas de reserva norteamericanas. *Pueblo v. González,* supra, pág. 695.

Ahora bien, mediante la incorporación de las cláusulas de reserva se ha advertido la intención del legislador de imponer limitaciones al principio de favorabilidad. *Pueblo v. González,* supra, págs. 698-699; D. Nevares-Muñiz, *Derecho Penal Puertorriqueño, op cit.*, pág. 102. Por consiguiente, resulta razonable concluir que, en nuestra jurisdicción, la aprobación de cláusulas de reserva opera como una limitación al principio de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador. *Pueblo v. González,* supra, pág. 702.

Esbozada la normativa jurídica que enmarca la controversia de autos, procedemos a aplicarla.

**III**

**A.**

De entrada, discutimos lo correspondiente al recurso con identificación alfanumérica KLRA202500118.

A través de su recurso KLRA202500118, el recurrente señala que la JLBP incidió al aplicar retroactivamente la Ley Núm. 85-2024, *supra.* En apoyo a su argumento, precisa que, la cláusula de exclusión que contiene la referida ley –en tanto excluye a las personas confinadas por ciertos delitos de ser elegibles para el privilegio de libertad bajo palabra– resulta en un estado de derecho más oneroso que el vigente al momento en que fue sentenciado. Esto pues, para ese entonces, el ordenamiento jurídico permitía que fuese considerado para el privilegio en cuestión. Así, aduce que, la Ley Núm. 85-2024, *supra,* altera el castigo que le fue impuesto, lo que violenta la cláusula constitucional que prohíbe la aplicación de leyes *ex post facto.* Veamos.

En principio, señalamos que, coincidimos con el argumento del recurrente, en cuanto a que la cláusula de exclusión que incluye la Ley Núm. 85-2024, *supra,* en este caso en particular, activa la protección constitucional contra la aplicación de leyes *ex post facto.*

Conforme surge del expediente, al momento de la comisión de los hechos, el ordenamiento jurídico proveía para que el señor Adorno Castro fuese elegible para cualificar al privilegio de libertad bajo palabra. De modo que, la referida cláusula, al excluir a las personas confinadas por ciertos delitos de ser elegibles para el privilegio de libertad bajo palabra, resulta en la extensión del término de reclusión. Lo que se traduce a una pena mayor a la impuesta inicialmente.

Ahora bien, aunque la cláusula de exclusión de la Ley Núm. 85-2024*, supra,* activa la protección constitucional contra las leyes *ex post facto* en este caso, ello no significa que tal protección quede activada por alegadamente habérsele excluido del beneficio del cómputo mínimo que implementó la Ley Núm. 85-2022, *supra,* según sugiere el recurrente. Nos explicamos.

Según hemos reseñado, nuestro ordenamiento jurídico reconoce cuatro (4) tipos de estatutos que activan la prohibición constitucional de leyes *ex post facto*, a saber: (1) si criminaliza y castiga un acto que al ser realizado no era delito; (2) si agrava un delito o lo hace mayor de lo que era al momento de ser cometido; (3) si altera el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) si altera las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable.[11]

---

[11] *Pueblo v. Ferrer Maldonado,* supra, pág. 990; *González v. ELA,* supra, pág. 408. Véase, además, *Pueblo en interés menor FRF,* supra.

De lo anterior se desprende que, todos los criterios mencionados que activan la prohibición constitucional de leyes *ex post facto* responden a la imposición de estatutos que establezcan condiciones más onerosas en comparación **a las que se encontraban vigentes al momento en que el delito fue cometido**.

En el presente caso, al momento de los hechos, 7 de enero de 2013, el ordenamiento vigente disponía que, las personas confinadas tenían que haber cumplido con la pena mínima de cada sentencia impuesta a extinguirse consecutivamente, para poder ser consideradas al privilegio de libertad bajo palabra. Posteriormente, se aprobó la Ley Núm. 85-2022, *supra*, la cual incluyó cómputos nuevos, ciertamente favorables al recurrente. No obstante, con la aprobación de la Ley Núm. 85-2024, *supra*, se aclaró que dichos cómputos no le eran aplicables al señor Adorno Castro, en tanto este había sido sentenciado por el delito de actos lascivos.

En otras palabras, la aprobación de la Ley Núm. 85-2024, *supra*, dejó sin efecto para con el recurrente un estatuto que **no** estaba vigente al momento en que se consumó el delito. Reiteramos que, la Ley Núm. 85-2022, *supra*, entró en vigor **luego** de los hechos cometidos en el presente caso. De modo que, la Ley Núm. 85-2024, *supra*, no implicó la imposición de un estatuto más oneroso que el vigente al momento de los hechos. Consecuentemente, no cabe hablar de una violación inconstitucional al principio contra leyes *ex post facto*, a base de un beneficio que **no** estaba disponible al momento en que el señor Adorno Castro cometió el delito.

De otro lado, razonamos que el nuevo cómputo implementado por la Ley Núm. 85-2022, *supra*, no le es de aplicación al recurrente al amparo del principio de favorabilidad. Esto, de conformidad a la cláusula de reserva establecida en la Ley Núm. 2024, *supra*.

Conforme surge del expediente, al momento de los hechos, el señor Adorno Castro era elegible para ser considerado al privilegio

de libertad bajo palabra. Para ese entonces, el ordenamiento jurídico disponía que, este debía cumplir el mínimo de su sentencia, a extinguirse consecutivamente, para poder ser elegible.

Posteriormente, entró en vigor la Ley Núm. 85-2022, *supra*, la cual redujo considerablemente el cómputo mínimo para que una persona confinada pudiese ser considerada para el privilegio de libertad bajo palabra. El referido estatuto aplicaba retroactivamente, siempre y cuando sus disposiciones resultaran más favorables para la persona confinada.

En vista de que el nuevo cómputo le permitía al recurrente ser considerado para el privilegio de libertad bajo palabra antes del tiempo establecido previamente, y de conformidad al principio de favorabilidad, a este le aplicarían las nuevas disposiciones estatuidas a través de la Ley Núm. 85-2022, *supra*.

Ahora bien, la posterior aprobación de la Ley Núm. 85-2024, *supra*, introdujo una cláusula de reserva, precisando que, las disposiciones de la Ley Núm. 85-2022, *supra*, no aplicarían retroactivamente a las personas confinadas por, entre otros, el delito de actos lascivos. Asimismo, la referida ley dispuso que, la JLBP no tendría jurisdicción para atender los casos de las personas confinadas por, entre otros, el delito de actos lascivos.

Precisamente, en el presente caso, el señor Adorno Castro cumple una sentencia por dicho delito. Por lo que, este se encuentra expresamente excluido del alcance de revisión de la agencia recurrida, en virtud de la cláusula de reserva que dispone la Ley Núm. 85-2024, *supra*. En consecuencia, resulta forzoso concluir que, la JLBP carece de jurisdicción para atender el caso del señor Adorno Castro.

Por ende, razonamos que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera de los poderes que le fueron delegados. Por el contrario, su determinación encuentra

cómodo asilo en las disposiciones expresas de la Ley Núm. 85-2024, *supra.*

Con todo, razonamos que el error señalado en el recurso KLRA202500118 no fue cometido.

Resuelto lo anterior, atendemos el recurso con identificación alfanumérica KLRA202500145.

**B.**

En primer lugar, nos corresponde examinar si ostentamos jurisdicción para atender el recurso KLRA202500145.

Conforme surge de los hechos reseñados, el señor Adorno Castro presentó un primer recurso de revisión judicial, con identificación alfanumérica KLRA202500118, el 24 de febrero de 2025. Por medio de este, el recurrente solicitó la revisión de la determinación emitida por la JLBP el 10 de diciembre de 2024, notificada el 20 de febrero de 2025.

Posteriormente, el 27 de febrero de 2025, recibido por la Secretaría de esta Curia el 11 de marzo de 2025, el señor Adorno Castro instó una segunda solicitud de revisión, con identificación alfanumérica KLRA202500145. Por medio de esta, solicitó la revisión de la misma *Resolución* emitida por la JLBP el 10 de diciembre de 2024, notificada el 20 de febrero de 2025. Nótese que se trata de **dos** recursos de revisión judicial para la revisión de un mismo dictamen.

Según el derecho expuesto, la Sección 4.2 de la LPAU, *supra*, dispone expresamente que una parte adversamente afectada por una orden o resolución administrativa final puede presentar **una** solicitud de revisión judicial ante este foro apelativo. En otras palabras, nuestro ordenamiento jurídico provee para la presentación de **un solo recurso** de revisión judicial solicitando la revisión de una orden o resolución administrativa.

En vista de que al momento de la presentación del recurso KLRA202500145 ya existía un recurso de revisión judicial ante la consideración de este foro, razonamos que carecemos de jurisdicción para atender el mismo.

Así pues, procedemos a desestimar el recurso KLRA202500145 de conformidad con la Regla 83 (C) del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B, R. 83 (C), el cual le confiere facultad a este foro para, a iniciativa propia, desestimar un recurso apelativo por falta de jurisdicción.

**IV**

Por los fundamentos antes expuestos, se confirma la determinación recurrida en el recurso con identificación alfanumérica KLRA202500118; y se desestima el recurso con identificación alfanumérica KLRA202500145 por falta de jurisdicción.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones